Filed 9/3/24  In re K.A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | B326025 (c/w B329769) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff, <br><br> v. <br><br> G.A., <br><br> Respondent; <br><br> E.C., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP03374A) |

APPEALS from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge. Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. McCurley, under appointment by the Court of Appeal, for Respondent.

No appearance for Plaintiff.

_____

Defendant and appellant E.C. (mother) challenges the juvenile custody order (exit order) issued by the juvenile court upon termination of dependency jurisdiction over her daughter, K.A. (minor, born Mar. 2014). (Welf. & Inst. Code, § 362.4.)[1] Mother contends that the court abused its discretion by only providing her a minimum of one in-person day visit with minor per year. We affirm.

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

# BACKGROUND[2]

## I. *Referral and Investigation*

Prior to the initiation of these dependency proceedings, mother and respondent G.A. (father) shared joint legal custody of minor pursuant to a family law order. (*In re K.A.*, *supra,* B316357.) Mother had physical custody of minor, with father having overnight visits every other weekend. (*Ibid.*)

"In June 2021, DCFS received a referral alleging that minor was visiting her maternal aunt (aunt) in Kentucky when the child disclosed that, in May 2021, father had touched her vaginal area under her clothing while they slept in the same bed." (*In re K.A.*, *supra*, B316357.)

During the ensuing investigation, aunt told a DCFS social worker that mother had recently moved to New Mexico with her boyfriend, leaving minor under the care of the maternal grandmother (maternal grandmother). (*In re K.A.*, *supra*, B316357.) Aunt brought minor to a doctor in Kentucky, who diagnosed her with vulvovaginitis. (*Ibid.*) Minor alleged that father had touched her vaginal area, which father denied. (*Ibid.*) The Los Angeles Police Department had closed its investigation into the allegations of sexual abuse because of insufficient evidence to complete a criminal report. (*Ibid.*)

---

[2] Portions of this section are drawn from our prior unpublished opinion concerning this dependency matter. (*In re K.A.* (May 16, 2023, B316357) [nonpub. opn.].) We grant mother's request to take judicial notice of the prior opinion. (Evid. Code, §§ 452, subd. (d), 459.)

## II. *Exercise of Dependency Jurisdiction*

On July 21, 2021, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minor. (*In re K.A.*, *supra*, B316357.)  At the adjudication hearing on October 27, 2021, the court sustained two counts pursuant to section 300, subdivision (b)(1) (failure to protect), based on the parents' medical neglect and father's inappropriate touching of minor.[3]  (*In re K.A.*, *supra*, B316357.)

"The juvenile court removed minor from the parents' custody and ordered her suitably placed with [maternal] grandmother.  DCFS was ordered to provide reunification services to the parents.  Father was granted monitored visitation; mother was granted unmonitored visitation with minor in [maternal] grandmother's home so long as [maternal] grandmother was home." (*In re K.A.*, *supra*, B316357.)[4]

## III. *Family Reunification Period*

"As of April 2022, mother continued to reside in New Mexico.  She had several video calls with minor each week.

---

[3]     The juvenile court dismissed a count in the petition brought under section 300, subdivision (d) (sexual abuse).  (*In re K.A.*, *supra*, B316357.)  The "court explained that it did not find evidence that father touched minor for his own sexual gratification—in other words, there was 'no evidence of sexual intent.'" (*In re K.A.*, *supra*, B316357.)

[4]     Mother and father each filed a notice of appeal following the adjudication hearing. (*In re K.A.*, *supra*, B316357.)  We affirmed the juvenile court's jurisdictional findings and dispositional order removing minor from mother's custody. (*Ibid*.)  We concluded that subsequent events had rendered moot father's challenge to the dispositional order removing minor from his custody. (*Ibid*.)

Mother completed a 52-week parenting program and was participating in individual counseling." (*In re K.A.*, *supra*, B316357.)

"At the six-month status review hearing on April 27, 2022, the juvenile court found that continued jurisdiction was necessary and that returning minor to parental custody would create a substantial risk of detriment to her. The court found by clear and convincing evidence that the parents were not in substantial compliance with their case plans despite DCFS offering reasonable services and making reasonable efforts to enable minor's return home. The court ordered that the parents receive further family reunification services." (*In re K.A.*, *supra*, B316357.)[5]

In advance of the 12-month status review hearing, DCFS reported that mother had moved to Kentucky at the end of April 2022. She "maintained minimal contact with" DCFS and "made minimal efforts in fully participating in her [c]ourt[-]ordered case plan." She had monitored in-person visits with minor over the course of four days in June 2022 and almost daily phone calls. Father's visitation was liberalized in August 2022 to outside of the DCFS office with the paternal grandmother (paternal grandmother) acting as a monitor. The visits went "very well" with no concerns. Minor expressed wanting to spend more time with father. The next month, DCFS further

---

[5] Father filed a notice of appeal from the juvenile court's findings and orders at the six-month status review hearing. (*In re K.A.*, *supra*, B316357.) That appeal was consolidated with the parents' appeals from the jurisdictional findings and dispositional orders. (*Ibid.*) We concluded that subsequent events had rendered moot father's challenge to the court's suitable placement finding at the six-month status review hearing. (*Ibid.*)

liberalized father's visitation, allowing him unmonitored weekend/overnight visits with minor. DCFS identified "no current safety threats" regarding father.

As of October 2022, DCFS had become increasingly concerned about minor's mental health, as she "often present[ed] as nervous, anxiety-ridden and worried." Throughout the dependency case, maternal relatives maintained that minor was terrified of father and paternal grandmother, and that being forced to visit father had detrimentally affected her mental health. However, numerous visitation monitors observed minor appearing "relaxed and genuinely happy in [father's] care." (Bolding omitted.) Minor reported looking forward to her visits with father and expressed no fear. DCFS attributed minor's "deteriorating mental health . . . to the conflicting message she [wa]s receiving from the maternal family and . . . [maternal grandmother]'s manipulation of her feelings and responses."

DCFS recommended that the juvenile court return minor to father's home under the condition that father and minor participate in family preservation services.

IV. *12-Month Status Review Hearings*

On October 26, 2022, at the 12-month status review hearing (§ 366.21, subd. (f)), the juvenile court released minor to father and set a contested hearing for the next month.

In a last minute information for the juvenile court filed on November 8, 2022, DCFS reported that a social worker had completed a virtual assessment of mother's home in Kentucky but was unable to determine whether the home was safe for

minor. Mother's son—minor's younger half-sibling (half-sibling)—was residing with a maternal relative.[6]

At the contested hearing on November 15, 2022, the juvenile court found that father's progress had been substantial, terminated the suitable placement order, and ordered minor to be returned to father's home. The court ordered DCFS to arrange for minor to visit with mother in Kentucky over Christmas for no more than one week.

V. *Family Maintenance Period*

In May 2023, DCFS reported that minor continued to do well in father's care. Father was consistent with family preservation services and received positive reports from his provider.

Mother continued to reside in Kentucky with the maternal grandfather (maternal grandfather), mother's boyfriend, and mother's infant child with her boyfriend. Mother had weekly phone calls with minor. Minor had refused to go to Kentucky in December 2022 for her planned trip to visit mother. The trip was rescheduled for minor's spring break. Prior to the rescheduled Kentucky visit, the DCFS social worker informed mother that maternal grandfather was not allowed to be around minor. Mother stated that she would rent a hotel room where she would stay with minor and that maternal grandfather would not be there. In violation of express directives, mother allowed maternal grandfather and her boyfriend unauthorized access to minor during the trip.

---

[6] Half-sibling is not a subject of these dependency proceedings.

VI. *Termination of Jurisdiction*

During the section 364 judicial review hearing on May 16, 2023, mother asked the juvenile court to retain its jurisdiction. If the court was inclined to terminate jurisdiction, mother requested joint custody, with primary custody to father until other arrangements could be made in the family court. As a second alternative, mother requested joint legal custody, sole physical custody to father, "and mother to confirm in advance however much time the court thinks is reasonable for an extended visit while she's in California between only her and [minor]."

The juvenile court found that the conditions that would justify the initial assumption of jurisdiction under section 300 no longer existed and were not likely to exist if supervision was withdrawn. Accordingly, the court terminated its jurisdiction but stayed the order pending receipt of an exit order.

The juvenile court explained that it wanted to "fashion something that would give [mother] as much flexibility as possible for visits . . . virtual, telephonic, and in person . . . in California." The court granted mother and father joint legal custody of minor, with tie-breaking authority to father, and awarded sole physical custody to father. The court ordered monitored telephonic and virtual visits for mother with minor at least two times per week for at least one hour. Mother was entitled to one monitored in-person visit per year in California. Mother's counsel requested that "mother's visitation orders be a minimum."

On May 26, 2023, the juvenile court received, signed, and filed the exit order. The order specified that, in addition to her twice weekly monitored virtual visits, mother was to "receive a

8

minimum of one all day monitored visit per year as arranged by the parties." The court lifted the stay on the termination of jurisdiction.

VII. *Appeals*

Mother filed a timely notice of appeal from the orders made at the October 26 and November 15, 2022, 12-month status review hearings. Mother filed another timely notice of appeal from the order terminating jurisdiction and the associated exit order. At mother's request, we consolidated the appeals.[7]

## DISCUSSION

The sole issue raised by mother is whether the juvenile court abused its discretion by issuing an exit order that provided her a minimum of only one in-person day visit with minor per year.[8]

I. *Relevant Law*

Section 362.4 "empowers the juvenile court, if it terminates its jurisdiction over a dependent minor, to issue 'an order determining the custody of, or visitation with, the child.' (§ 362.4,

---

[7] DCFS filed a letter stating that, because it had not requested the frequency of in-person visitation challenged by mother on appeal, it was "not the proper respondent" and would take no position on the issue. Thus, only father filed a respondent's brief.

[8] Mother raises no arguments on appeal pertaining to the orders made at the 12-month status review hearings or the order terminating dependency jurisdiction. Accordingly, she has forfeited any claim of error regarding those orders. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

9

subd. (a).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 862–863.) Such orders—"commonly referred to as 'exit orders'" (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871)—"become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.)

In crafting exit orders, "it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount." (*In re John W.* (1996) 41 Cal.App.4th 961, 965.) "Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . . Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' [Citations.]" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112.)

II. *Standard of Review*

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case [citation].' [Citation.]" (*In re J.M.*, *supra*, 89 Cal.App.5th at pp. 112–113.) We review an exit order for an abuse of that discretion and may not disturb the order "'unless the . . . court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' [Citation.]" (*Id.* at p. 113.)

III. *The Juvenile Court Did Not Abuse Its Discretion*

We find no abuse of the juvenile court's "'broad discretion'" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112) in issuing an exit

10

order that limited mother's in-person visitation with minor to a minimum of one day per year.[9]

Throughout the course of this dependency matter mother elected to live out-of-state, which limited her in-person visitation with minor. She "maintained minimal contact with" DCFS and failed to fully participate in her case plan. When the juvenile court authorized minor to visit mother in Kentucky, minor refused to go on the first scheduled trip. During the rescheduled trip a few months later, mother violated express directives from DCFS by permitting maternal grandfather and mother's boyfriend to have unauthorized access to minor. This incident, which occurred only a few weeks before the court made the exit order, demonstrates mother's lack of judgment and protective capacity. The record also discloses DCFS's concerns about minor's mental health.

Given the totality of these circumstances, the juvenile court could very reasonably conclude that setting mother's in-person visitation to a minimum of one day visit per year was in minor's best interests. This, of course, was in addition to mother's

---

[9] In his respondent's brief, father contends that mother forfeited her argument regarding the frequency of in-person visitation by failing to specifically ask the juvenile court for additional visits. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 ["A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the [juvenile] court"].) Mother disagrees, pointing to her counsel's request below for an "'extended visit'" to take place in California. (Italics omitted.) We need not delve into the level of specificity required to preserve an argument for appellate review. We have discretion to excuse forfeiture (*In re H.D.* (2024) 99 Cal.App.5th 814, 817–818) and, in any event, conclude that the court did not abuse its discretion.

11

entitlement to twice weekly virtual visitation with minor. As mother lived across the country from minor and had shown that she could maintain consistent telephonic contact, it was reasonable for the court to grant more frequent virtual rather than in-person visits. There is nothing "'arbitrary, capricious, or patently absurd'" about such a determination. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 113.)

Mother resists this conclusion with several arguments.

First, mother asserts that previous in-person visits had gone well, with minor being excited to see mother and happy in her presence. While this evidence supports the juvenile court's implied finding that some visitation with mother (in the form of twice weekly virtual visits and a minimum of once-yearly in-person visits) was in minor's best interests, it does not demonstrate that the court abused its discretion by putting reasonable limits on that visitation.

Second, mother contends that more in-person visitation with mother would foster contact with half-sibling, who lived with mother in Kentucky. While that is possible, it is also speculative that mother would actually bring half-sibling to California to visit minor. (See *Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 834, fn. 13 (*Friends of Lagoon Valley*) ["speculation does not establish an abuse of discretion"].) Further, the juvenile court could reasonably conclude that any detrimental effect that the exit order had on minor's relationship with half-sibling was outweighed by the potential risks to minor if mother were entitled to more frequent in-person visitation.

Third, mother argues that "any concern that [m]other might again bring an unauthorized individual around [minor]

had been mitigated" by ordering in-person visits to take place in California and be monitored. We disagree. Mother had not demonstrated that she could consistently follow directives set to protect minor; thus, the juvenile court could continue to be concerned about mother's protective capacity during in-person visits and limit the frequency accordingly.

Finally, mother surmises that, based on her acrimonious relationship with father, "it is very unlikely that [f]ather would agree to allow [m]other visits beyond the minimum." Again, "speculation does not establish an abuse of discretion." (*Friends of Lagoon Valley, supra*, 154 Cal.App.4th at p. 834, fn. 13.) And, if mother believes that father is unreasonably impeding her visitation with minor and that there has been a significant change of circumstances since the termination of juvenile court jurisdiction, she can petition the family court to modify the exit order. (§ 302, subd. (d).)

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

13